Thank you. Good morning. May it please the Court, my name is Paul Achitoff and I am arguing on behalf of the Plaintiff's Turtle Island Restoration Network, the Iwa Kualele Center for Biological Diversity. The key principle governing this appeal is that a statute should not be interpreted to produce absurd results. I believe that the closer the Court examines the implications and consequences of the District Court's disposition, the more evident it becomes that the ruling cannot be the law. It would create different statutes of limitations for the same actions depending on the happenstance of when those actions happen to occur. It would make certain types of claims impossible to bring and severely impair the enforcement of others without any evidence of Congressional intent to do so. And it would make statutes of limitations for environmental laws depend on the statute authorizing the impacts being analyzed. And it would have implications that can only be described as nonsensical. All that sounds terrible. Well, I think it is, Your Honor. Wait a second. It would be terrible if it were true that that would be the effect on all the environmental statutes in the United States, but here's my concern and maybe you can help me with it. When I read your brief, all that made me sit up because if it were true, that would be devastating. But when you have a statute that basically says if there's regulations and they relate to this fish management plan, fishery management plan, that's all we're talking about in this case. We're not trying to interpret what might be a statute of limitations in any other case. Just here where you have fishery management regulations. Why is that the end of the world as related to this one item? Your Honor, virtually all commercial fishing is regulated as a result of these regulations. Therefore, we are talking about an enormous amount of activity with a very wide variety of very serious environmental consequences. The fishery management plans are the basic management document that governs virtually all of our commercial fisheries in the Pacific and the Atlantic. But when those are enacted and with the various notice and comment and the biops and the EISs, they don't just land one day in the Federal Register and then you have 30 days to file suit. It would be nice if, in fact, you had at least 30 days to file suit after it landed in the Federal Register. But frankly, that does not even happen. And let me explain. Let me give an example here. We have, under Section 7 of the Endangered Species Act, the action agency, in this case, in these types of cases, the sustainable fisheries branch of the fishery service, which actually implements the regulations we're talking about, has to consult with what's known as the expert agency, which is either going to be the Fish and Wildlife Service, if we're talking about birds or terrestrial species, or the Office of Protected Resources within the fishery service, which, for jurisdictional purposes, is essentially a separate agency from the Sustainable Fisheries Office. They're both within the National Marine Fisheries Service, but they're bifurcated for these purposes. The action agency, Sustainable Fisheries, issues the regulation under the Magnuson Act. They consult with either the Fish and Wildlife Service or Office of Protected Resources, which then issues a biological opinion. The biological opinion is issued by an agency which is separate from the agency that issues the regulation. The agency that issues the biological opinion is not acting under the Magnuson Act. It has no responsibilities under the Magnuson Act. In the most obvious case, it can be the Fish and Wildlife Service that issues the biological opinion. In fact, it does issue biological opinions with respect to the fisheries impacts on the short-tailed albatross and other endangered seabirds. The absurdity is, first of all, that you would have to sue the Fish and Wildlife Service or the National Marine Fisheries Service's Office of Protected Resources if you were challenging the adequacy of the biological opinion that they prepared under the 30-day statute of limitations under the Magnuson Act, which does not even govern their conduct. It makes no sense whatsoever. Moreover, there is no law that requires that either the Fish and Wildlife Service or the Office of Protected Resources within the fisheries service, the expert agencies, there's no law that requires them to produce a biological opinion at any particular time or to make it available to the public or to put it in the federal register. Quite often, one can become aware that a biological opinion has been prepared, but in other cases, one might not. One certainly might not be aware of it at the time that the regulation that it is analyzing is put in place and the statute of limitations under the Magnuson Act starts to tick. One can ask for a copy of the biological opinion under FOIA, but you're never going to get it within the 30 days that you're given under the statute of limitations for the Magnuson Act. Another example of how you cannot be expected to bring every case within 30 days. Let's take the Migratory Bird Treaty Act, for example, which is another claim in our case. At the time the regulation is put in place, the 30 days starts to tick. Let me just go back. If in making a fisheries management amendment, NEMS is required to comply with all applicable law, that would include the NEPA and the ESA, would it not? Yes. Okay. And so if it's required to do that before the sausage can come out the other end of the fisheries management regulation, they would have supposedly had to comply with those laws, correct? Correct. In which case, you would have had the BIOPS or the EIS or whatever would have occurred if they complied with the law, correct? Yes. So how does that square with the story you just finished telling, which is we'll never get notice, we'll never be able to see these things? The question, the point I'm making is that there is, certainly they are required to comply with the law, as every agency is. But the point is, what is the plaintiff to do if they don't? That's the problem. If they do not, if there is no biological opinion, and this has happened, I've certainly brought many suits where either the biological opinion does not exist when we believe it should or we believe it's inadequate. The question is, when can you sue? Well, if you have a regulation, let's say the regulation comes out and there's no biological opinion. How do you know? Well, because if they haven't, if it hasn't been published or given to you, wouldn't you have authority to say these regulations are invalid because there's no process here for public input in a NEPA process? As I say, there is no regulation, there is no law that requires that a biological opinion be put in, the notice of it be put in the Federal Register, that it be given to an inquiring person other than through FOIA. You may get it, you may not. It is not required. In other cases, you cannot know within 30 days whether or not there is a legal violation that can be challenged. For example, as I was saying under the Migratory Bird Treaty Act, the question is, is there a take of a migratory bird occurring in the fishery without a permit from the Fish and Wildlife Service? Well, this regulation may be put in place at a time when fishing under the regulation is not going to occur even within the 30 days. That was the case here. The swordfish season does not occur during the middle of the summer. This regulation came in April. So then wouldn't it be a question of how broadly you interpret the scope of the way the statute is phrased, the matters that relate to fisheries management plans? So, for example, if you couldn't know until they actually proceed under the amendment as to whether or not there's a take, then maybe that's not included in the scope of the regulatory challenge. In other words, it's not an all-or-nothing proposition, necessarily. Well, I think that the proper interpretation of the statute should not rely upon the happenstance of when the fishing occurs that is authorized. Sometimes one boat might go out two weeks later, but the season doesn't start until six months later. One never knows. I think the statute of limitations, by the nature of such things, must be clear and predictable for all parties. So what do you think you have to challenge? I mean, it's sort of odd. You knew everything about it because it was all in the record. All the arguments you're making here you made in the administrative record. And then for whatever reason, you filed the lawsuit four months later instead of 30 days. What do you think is covered under the 30-day regulation statute? Under the 30-day statute, I would say that it should be interpreted to cover all substantive and procedural challenges under the Magnuson Act, which is exactly the result that the Court reached in the Tenth Circuit in Park County Resource Counsel v. USDA and several district court decisions that have relied upon that. Park County itself relied upon this Court's decision in Jones v. Gordon. Isn't Park County the one, though, that has the PERP? Which one is that? Park County is the Mineral Lands Leasing Act. That's oil and gas, and that has a whole other statute. It's a different statute. It's a completely different statute. Of course it is. I don't put much credence in whether they interpreted it or misinterpreted the Ninth Circuit because it's like such a different statute that I don't think there's a lot of parallels. A parallel, I would say, is that the statute of limitations on its face in the Mineral Lands Leasing Act says that it governs all actions, quote, contesting a decision of the Secretary involving any oil and gas lease. Quite broad. But the Court, looking at Jones v. Gordon, said that 90-day statute of limitations cannot be deemed to apply to a NEPA challenge that occurred after the 90 days, which is essentially what this Court said in Jones v. Gordon. You cannot apply the statute of limitations to a NEPA challenge brought against a permit issued under the Marine Mammal Protection Act, which has a 60-day statute of limitations. In other words, you don't look to the substantive statute when you are trying to determine the challenge under the environmental law. You look, in the case of NEPA, you're looking at the APA, which has a six-year statute of limitations. What's ambiguous about the statute of limitations in this particular instance? About the language used in the statute? 16 U.S.C. 1855F. The words themselves make perfect sense. The question is, what did Congress intend to them to mean, to what did Congress intend them to apply? If the language of the statute is clear and unambiguous, why would we look to the legislative history or try to determine the intent of Congress? If I may, let me quote from a Supreme Court case that is quite old but continues to be cited, which is a court of Holy Trinity v. United States that said, Frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the absurd results which follow from giving such broad meaning to the words make it unreasonable to believe that the legislator intended to include the particular act. This is why I say if we look at the actual effect of applying it as broadly as the words arguably imply, you find that the results are absurd. You find that, for example, if a regulation is issued on day one and a biological opinion or an EIS comes out on day 15, how much time do you have? If it comes out on day 31, how much time do you have? According to the defendants, if something happens after day 30, you may have six years under the regular APA statute applicable to APA actions. But if it happens on day one, you have 30 days. It makes no sense, and God only knows what the statute is if it happens between day one and day 30, whether it's the remaining time or an additional 30 days or what. The problem is that these actions, issuance of an EIS, a biological opinion, these are separate agency actions that do not necessarily occur simultaneously with the issuance of the regulation that authorizes the fishing being analyzed in these documents. Okay, well, let's split it up time-wise. If something occurs after the timing of the regulations, if it occurs 30 days after the regulations, my understanding is the defendants would not suggest that that somehow is swept into the 30-day time frame. Is that correct? I believe that under certain circumstances, they're saying that it would be six years. Because it occurred after the regulation plus 30 days. But let's look at a situation. No, let's stick with this situation first, and then we'll go and look at the other situations. I'm sorry. So in that situation, it would seem you would have no complaint to the extent that if something occurred, whether it was a consultation by ops or whatever, after the 30-day time frame, and if the normal six-year statute kicked in, you have no complaint with that interpretation, correct? No, Your Honor. Let's give the example. You are less than six years? I'm saying that what you wind up with is an irrational and unpredictable situation. If, for example, the regulation comes out on day one, they're supposed to be a biological opinion and an EIS, let's say. They come out on day 31. What is the statute of limitations? Is it now six years? But if it came out on day one, then you would have 30 days to challenge it? But let's back up as a practical matter, because you're making up all the impossible what-ifs. But regulations don't just come out without a pre-regulatory process that is required under the APA. So it's not like it's today and I can just issue this on behalf of the Fish and Wildlife Service. There's a pre-regulatory process of notice and comment, et cetera, correct? Yes. So backing up from the 30 days, there's always going to be some period. Your complaint is that within that some period, they might not get, you may or may not see an EIS or a biopsy. Oh, absolutely. You may not know until certainly after day one.  Or in the case that I gave about the MBTA, you may not know at the time the regulation is promulgated. Right, but now you're mixing and matching. That's my problem, because if you don't know until after the regulation is promulgated, until after the 30 days, then the suggestion is that this can't apply. It's going to have a statute of limitations applying to something that is post hoc down the road. Well, if we're talking about the situation with the MBTA and you're talking about a take of migratory birds, does the statute start to run when the first bird is taken by the first boat that fishes as authorized by the regulation? So in other words, the statute starts whenever that first bird is taken? Perhaps, but it seems like one's making this up. Well, but isn't normally in that the question is whether, it's not that a bird is taken, it's whether there's an authorization for a take. Right. Isn't that really the critical issue? Sure. The question is, is there an authorization for a take? Not whether you take it. Well, there's no violation if there is no take. So the question is. Well, but there could be, you could have an improper regulation authorizing a take because it might not be consistent with the terms of the law if you authorize a take. Well, if you have, in this case. So in other words, every case we have, whether it's taking trees or birds or whatever, it's not that they've chopped down the tree or taken the bird. It's that the, it's a question as to whether the authorization for the take meets a legal standard. I understand, but this is not a situation where the regulation is at all likely, I frankly would say it will not authorize a take of a migratory bird per se. That's not what the regulations do. They will say you can go out and fish in this manner, in this place, at this time. And the question is not, are they saying you're entitled to take seabirds and then you can put your finger on it and say, oh, no, you can't do that. You don't have a permit. It's not that situation. It's saying you can fish. Now, if I see this regulation and I say, wait a minute, if they do that, in my judgment, they're certain to take seabirds. And, in fact, I think it's clear that they will. And, in this case, that was my judgment and that, in retrospect, is what occurred. The question is, do I now have 30 days to sue on that regulation because it's authorizing fishing that may not occur for a month, six months, who knows, down the road. But I know at that moment that, gee, this may, I think there's a pretty good chance that there may be a take of seabirds and, therefore, I think this violates MBTA. Or no, I have six years. Because that's what normally happens if you have, I mean, why, the real question is why do we have a 30-day limit? It's a short limit, admittedly, but it is directed to fishery management plans. Now, we could argue that they shouldn't give sufficient time, but that's the time they gave. Well, there's no doubt that they intended to limit certain kinds of challenges to 30 days. But what I'm saying is I believe the correct interpretation, and given, frankly, the history, this statute's been on the books for almost 30 years. Okay. If we go back just a little ways, we'll find that even the government never interpreted and even argued that this statute applied in this way. Right. And we're aware of that, and we want to ask them about that for me. And, in fact, if we go back to, you know, the somewhat, the provision against preliminary injunctions, which is argued in the same breath, if we go back to a case before this Court, the Greenpeace Action v. Franklin case about 1994, I believe, the government even suggested that a preliminary injunction could issue when it was trying to argue that the case should be considered moot. Maybe this is a good time to hear from the government. Our questions have taken you substantially over your time. Thank you. We'll hear from the government at this time. Good morning, Your Honors, and may it please the Court, Alice Thurston on behalf of the Department of Commerce, and with me at council table is Ms. Laurie Beal, representing Intervenors, Hawaii Long Line Association. We'll be splitting our time 10 minutes and 5 minutes, respectively. The limited issue in this case is whether this complaint challenging these regulations should have been brought within the 30-day statute of limitations rather than 150 days after the regulation issued. First off, I'd like to just point out there's never been any assertion that it could not have been brought within the 30-day limitations. And what I'd like to do is to go back to your question, Your Honor, about ambiguity and just highlight one thing that I think, although it was briefed in my brief, it wasn't responded to in the reply brief. I think it may be lost on the Court, or it may have been lost in the discussion. The statutory provision of the MSA doesn't merely state that 30 days applies and that no preliminary injunctive relief shall be available under the APA. It reaches out and expressly incorporates reasons for invalidating Magnuson Act regulations, which include the claims before this Court. The jurisdictional provision incorporates Section 706-2A, B, C, or D. A regulation, an MSA regulation, can be set aside if it's otherwise not in accordance with law, if it's contrary to the Constitution, which would not be a Magnuson-Stevens Act violation, if it's in excess of statutory jurisdiction, or if it's without observance of procedure required by law. NEPA, a procedural statute, would be encompassed in that provision of the APA, which is expressly incorporated in the Magnuson-Stevens Act jurisdictional provision. What about the Endangered Species Act? Would that be incorporated? Well, if the regulation had been adopted without observance of procedure, there's some procedural aspects of the ESA consultation provisions, whereas otherwise not in accordance with law. And let's say there was no evidence at the time a regulation had been promulgated, and that would include publication in the Federal Register, and it would usually discuss what laws had been conformed with and what had happened in the regulatory process. You're entirely right. There is a notice and comment process, there's proposed regulations, and then there's a pretty full description of what the agency has done to arrive at the final regulation. They have 30 days from the date of publication in the Federal Register to say, hey, there's no discussion of whether or not they complied with the ESA in this regulation, or we're going to sue. It's not a mystery as to what's out there. In this case, these — But let's just take counsel's point there, that in timing of some of these things is quite protracted, as you know. And if the biopsy hasn't even been produced yet, and to the extent it is produced, it's an internal agency document, would your reading of a statute basically compel organizations like Turtle Island to have to make prophylactic filings every time a regulation came out? No. In fact, I don't think so. I think that in the case of a regulation being filed, you can see from the terms of the regulation what it is that has been accomplished in the process, the environmental reviews that have been undertaken in the process of that regulation. And not only that, but if you look on page 23 of my brief, I do recite one, two, three, four, I think, or five places in the Federal Register where the biological opinion was publicly talked about. It was either included as, you know, there's going to be a discussion on the biological opinion in this upcoming meeting on this regulation. It was physically included in the final EIS, which, of course, issued and was made public prior to the regulation issuing. And it was, in turn, participated in all of these activities. And on February 27, 2004, gave notice that they thought that the regulation violated each of these statutes. And they weren't talking about the biological opinion. They said the regulation violated. Well, I think their argument, and I don't want to mischaracterize it, but they're not saying they didn't know in this case because everybody knows they did know. I mean, all this stuff was on the table. And I think it could be argued they could have brought it within 30 days. But since it's a question of statutory interpretation as opposed to subjective knowledge, counsel is saying this often isn't the case in the sequence of these environmental cases. And how will you be able to bring a case where things happen beyond the 30 days? Had they felt that the regulation issued improperly without either an EIS, if they felt that that was required, or a biological opinion, then it is incumbent upon them to sue within the 30 days. Even if something were to happen down the road, it's the regulation that they're challenging. It sounds a little contrary to sort of the reverse of retroactivity. Are you saying that when a regulation under this particular act is final and published in the Federal Register and a concerned organization like the one involved in this case thinks that it might have some deleterious effect that might violate other statutes, they have to guess, they have to file a suit saying, we think this might happen, but it might happen later? You have a proposed regulation that's also published in the Federal Register. And at that point, people come and they say, we think you haven't done, you've only done an environmental assessment, for example, due an EIS. When the final regulation comes out, either the agency has or has not done that EIS, and it's in the final regulation. It's not a mystery. The agency tries to be explicit as to what it has accomplished. If they have not done a biological opinion or an EIS, that's the point at which you must present your challenge. And it's irrespective of what the agency might do in some future context down the road, whether or not it pertains, you know, to something that's an ongoing result of the regulation. But what is your response to his argument with respect to the Migratory Bird Act and the timing of whether there will or might be an illegal take? Well, again, I'm not sure that they have a private right of action under the Migratory Bird Treaty Act. In fact, they don't. So what they're trying to do is to bring that in through their claim under the Endangered Species Act. It's all aimed at not the biological opinion, but at the illegality of the regulation that they're focusing on. But if, and we say this in our brief, if there is a take down the road that has not been allowed by law, that's the point at which they can bring. So there's not a requirement for a biological opinion, for example, under the MBTS. You don't have that documentary evidence. Well, I mean, it's always a little bit ambiguous when we talk about a private right of action against the federal government when really what they would be doing is challenging the administrative process. I mean, they do have a right to do that, do they not? Yes, they do have a right to do that. But what they're doing is they're challenging the regulation as opposed to what you're talking about, which is a take that occurs automatically. And I do think there's a difference here. We have a statute which is directly addressing when a regulation is published. And it's not unusual for Congress to put regulations under short time constraints. The Hobbs Act covers many federal agencies. It has a 60-day statute of limitations. That's not much longer. The statute of limitations at issue, I think, in the Regional Power Act was 90 days, I believe. And there are other statutes, the AAIA for the FAA Act. The FAA, the Federal Aviation Administration, also has a very short statute of limitations. And if you look at all of those cases with respect to the Federal Aviation Administration, you will see that this court in particular does a lot of air court cases. And they include the challenges to the biological opinions put forth by other agencies, challenges to NEPA analyses, challenges to compliance with the National Historic Preservation Act as overseen by the Advisory Council on Historic Preservation. All of these laws are subsumed into a challenge to the agency decision of the final agency actor, which in those cases is the FAA. Although we wouldn't normally look to legislative history if the statute is unambiguous. Sometimes courts look to legislative history just, I suppose, for buttressing or consistency. Is there anything that you can point to as to why it's 30 days? In terms of such a short, it's a fairly short time limit. And whether there was a sense that in challenging the regulation, you in effect had to challenge the whole ball of wax. Is there anything in the legislative history that would point to the interpretation you ask us to adopt? Well, if I may look at the structural and the legislative history, you have within the Madison-Stevens Act a number of provisions providing for expedited review. There's a provision saying that no preliminary injunctive relief will be available, and that's pretty much settled law. You have the provisions requiring the agency to file a response to a petition for review right away or to file something with the courts. So the idea is speed. Excuse me? The idea is speed. Speed. And Congress actually, the one thing I'm able to draw from legislative history is Congress's is a statement in the record to the effect that they don't want preliminary injunctive relief to prevent the regulations. They don't want this stuff tied up so it can't go forward. Sorry? They don't want it tied up in court so that it can't be implemented. Correct. And not only that, but even while it's going forward in court, they don't want it to be enjoined. Of course, ultimate injunctive relief is available if, in fact, the regulation were struck down. But that's not the point. The point is Congress is trying to expedite this case in particular. As I think, you know, I don't think it's unusual for cases of very broad application, regulations of broad applications, to have Congress being interested in providing for fairly strict jurisdictional limitations, which this Court is bound on. If you wanted to give counsel. Thank you. Thank you for your interest. It's hard to list but five minutes on the clock. Counsel? Good morning, Your Honors. May it please the Court. I appreciate your giving me the extra time. I understand coming second is always a challenge here. I'm here on behalf of the Hawaii Long Line Association. That is the fishers, the vessel owners, and the local businesses that are directly affected, both by NOAA's regulation of the fishery and by the fishery litigation brought by the appellants I referred to as TURN and their affiliated groups. I'd like to primarily address two points and then, of course, answer any other remaining questions. First, TURN has failed to show that its claims were not cognizable under the Magnuson-Stevens Act or MSA, which is dispositive here. And second, I'd like to explain, at least in my view, that the district court's ruling really applies to a very narrow class of claims and doesn't have the sort of broad sweeping effect that TURN has asserted. Now, with respect to the first point, TURN has not even attempted to establish that it could not have brought all of these claims directly under the Magnuson Act. The Magnuson Act expressly provides for review of whether a fishery regulation complies both with the MSA's substantive standards and with other applicable law. The court has previously recognized this principle. For example, in the Washington V. Daly case, there was an ESA claim brought under the Magnuson Act, and the court expressly found that the Magnuson Act procedures for judicial review controlled in that circumstance and therefore the plaintiffs did not have to meet the ESA 60-day notice requirement. And there are other cases where the court has certainly reviewed a fishery regulation as to whether or not it complies with NEPA, with the ESA, and with other environmental statutes. So I believe the court has already noted that you do need to look at the express language of this statute and not necessarily be able to analogize with some of the other cases that have been talked about because it's the language that's controlling. Now, under the APA, Section 704, you only get Administrative Procedure Act review if you have no other adequate remedy at law. So if TURN had a remedy under the MSA, then it was not entitled to sort of fall back on the APA. And there are also cases explaining that just a mere failure to comply with the procedures of a statute doesn't equate inadequate review. I would refer the court to the Idaho Sporting Congress case, which is similar, in which the statute provided for very limited environmental review. The plaintiffs attempted to assert an APA claim, and the court said, well, under 704, you have another remedy, so you do not get to proceed under the APA. I believe if the court looks at the issue presented in — in your statement, what the reference to the APA, which is subsumed in the judicial review statute, means then. You mean in the — In the Magnuson Act. Magnuson Act. Yes. I believe it just makes explicit that those are the controlling standards for review. So I would read this as saying you review it on certain grounds, you know, the grounds that just refers to the APA standards of review, basically. There are two separate things. The government pointed to that as illustrating that review is as to whether or not the regulation complies with, you know, other laws beyond the Magnuson Act. But you also have in the Magnuson Act, and that's Section 1854b1, in order to approve a regulation, NMFS has to find that the regulation complies with other applicable law. And I think that makes the statute unique and distinguishes it from, for example, the Jones v. Gordon case and also the Park County case. If you look at Jones v. Gordon, I understand the Court to be saying that the claim could not have been asserted under the Marine Mammal Protection Act, and so it wasn't subject to that limitation. Now, my second point was just that I believe the Court's ruling is much narrower than Tern has asserted here. Tern itself, in fact, has brought many lawsuits, including another lawsuit before this panel, and that argued that NMFS made an error under the Marine Mammal Protection Act in how it classified the fishery. Now, that did not implicate an MSA rulemaking, and no party argued there that that claim was somehow bound to the MSA's limitation, even though it did relate to the fishery. So in conclusion, Your Honors, I believe that the Court needs to look at each claim that's And if so, then review is not available under the APA. Thank you. Thank you for your argument. Would you like one minute? And I don't mean one minute and 30 seconds. I mean one minute. Thank you. Thank you. With regard to the Idaho Sporting Congress case, I'm glad that counsel brought it up because I think it's a that case in discussing the Rescissions Act is a very good example of what Congress does when it wants to preclude or limit review under the environmental laws. In the Rescissions Act, the language was extremely explicit in saying NEPA doesn't apply, ESA doesn't apply, none of these natural resource laws apply. It was a belts and suspenders approach, and it was very explicit. Nothing like that in the Magnuson Act. I also want to point out that the focus on what this plaintiff knew in this particular case, what this plaintiff could have done, should not control the interpretation of the statute of limitations, which should be based upon certainty and predictability for all parties in all situations. With regard to the adequacy of an APA, of a remedy, there's nothing adequate about the remedy here where there is no, allegedly no availability of preliminary injunctive relief to prevent potential extinction of species. There's nothing adequate there. Thank you. Thank you for your argument. Thank everyone for their argument. The case just argued will be submitted for decision.
judges: Hawkins, McKeown,clifton